UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANUL MALIK RAM,<br><br>   Petitioner,<br><br> v.<br><br>SACRAMENTO COUNTY,<br><br>   Respondent. | No. 2:15-cv-2074 WBS DB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges her 2011 pleas of guilty to second degree murder and not guilty by reason of insanity to attempted murder. Petitioner claims: (1) there was no legally sufficient basis for her plea to attempted murder, and (2) counsel was ineffective for failing to challenge the legal sufficiency of that charge. Respondent's motion to dismiss the petition as untimely is before the court. For the reasons set forth below, this court recommends the motion to dismiss be granted.

## BACKGROUND

In 2009, petitioner was charged with the first degree murder of her three-year-old daughter, with the special circumstance of sexual penetration during the course of the homicide. (See ECF No. 24-2 at 47.) On April 29, 2011, petitioner entered a guilty plea to second degree murder. (Id. at 84.) At the time she entered her plea, the prosecutor amended the information to

1

add a charge of attempted murder of petitioner's seven-year-old son. (Id. at 86.) Petitioner then entered a plea of not guilty by reason of insanity to that newly added count. (Trans. of Change of Plea (LD 1[1]).) On June 11, 2011, the Sacramento County Superior Court sentenced petitioner to a term of fifteen years to life in state prison on the murder count and immediate commitment to Napa State Hospital on the attempted murder count. (LD 3, 4.)

Petitioner did not appeal her conviction.

In January 2015, according to petitioner, she regained competency. On June 21, 2015, petitioner, acting in pro per, filed a request with the Court of Appeal for the Third Appellate District for an order permitting the filing of an untimely notice of appeal. The Court of Appeal denied that request. (See ECF No. 24-1 at 5-6.)

On August 25, 2015, petitioner filed a federal petition for a writ of habeas corpus in the United States District Court for the Central District of California. (ECF No. 1.) On October 2, 2015, the case was transferred to the Eastern District. (ECF Nos. 3, 4.) On April 15, 2016, the court appointed the Federal Defender to represent petitioner. (ECF No. 10.) Shortly thereafter, attorney Marylou Hillberg was substituted for the Federal Defender. (ECF No. 14.)

On November 20, 2016, petitioner moved to amend the petition. (ECF No. 24.) The court granted that motion and petitioner's first amended petition (ECF No. 24-1) became the operative petition in this proceeding.

On November 23, 2016, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court. (See ECF No. 27 at 2.) In that petition, petitioner raised the same claims raised in the first amended petition herein. (See id.) On January 25, 2017, the California Supreme Court denied that petition. (ECF No. 29 at 2.)

On March 2, 2017, respondent moved to dismiss the petition as untimely. (ECF No. 30.) The court considers respondent's motion below.

////

---

[1] On March 15, 2017, respondent lodged documents from petitioner's state court criminal proceedings. (See ECF No. 31.) Those documents are referred to by their Lodged Document ("LD") number.

# MOTION TO DISMISS

Respondent argues the claims in the first amended petition are untimely because they do not relate back to the claims in the original petition. Petitioner contends the claims do relate back and, even if they do not, she is excused from the statute of limitations because she is actually innocent of the attempted murder of her son.

## I. Legal Standards

### A. Standards for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." The Court of Appeals for the Ninth Circuit construes a motion to dismiss a habeas petition as a request for the court to dismiss under Rule 4. See O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990). Accordingly, the court will review respondent's motion to dismiss pursuant to its authority under Rule 4.

In ruling on a motion to dismiss, the court "must accept factual allegations in the [petition] as true and construe the pleadings in the light most favorable to the non-moving party." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1030 (9th Cir. 2008)). In general, exhibits attached to a pleading are "part of the pleading for all purposes." Hartmann v. Cal. Dept. of Corr. and Rehab., 707 F.3d 1114, 1124 (9th Cir. 2013) (quoting Fed. R. Civ. P. 10(c)).

### B. Statute of Limitations

The habeas statute's one-year statute of limitations provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

3

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Under subsection (d)(1)(A), the limitations period runs from the time a petition for certiorari to the United States Supreme Court was due, or, if one was filed, from the final decision by that court. Lawrence v. Florida, 549 U.S. 327, 339 (2007).

### 1. Tolling

The limitations period is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A state petition is "properly filed," and thus qualifies for statutory tolling, if "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000). "The period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled—because it is part of a single round of habeas relief—so long as the filing is timely under California law." Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010) (citing Evans v. Chavis, 546 U.S. 189, 191-93 (2006)); see also Carey v. Saffold, 536 U.S. 214, 216-17 (2002) (within California's state collateral review system, a properly filed petition is considered "pending" under section 2244(d)(2) during its pendency in the reviewing court as well as during the interval between a lower state court's decision and the filing of a petition in a higher court, provided the latter is filed within a "reasonable time").

The limitations period may be equitably tolled if a petitioner establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). An extraordinary circumstance must be more than merely "'oversight, miscalculation or negligence on [the petitioner's] part.'" Waldron–Ramsey v.

4

Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)). Rather, petitioner must show that some "external force" "stood in his way." Id. "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule." Lakey v. Hickman, 633 F.3d 782 (9th Cir. 2011) (citations and internal quotation marks omitted).

### 2. Relation Back

Where a petitioner has filed a timely petition and then amends to replace the original claims with new claims, but does so after expiration of the statute of limitations, those new claims are only timely if they "relate back" to the claims in the original timely petition. See Mayle v. Felix, 545 U.S. 644, 654-55 (2005). In order for claims to relate back, they must be "tied to a common core of operative facts." Id. at 664. Simply arising out of the same "trial, conviction, or sentence" is insufficient. Id. A claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650.

## II. Analysis

Petitioner does not contest the untimeliness of her petition filed August 25, 2015.[2] She contends, however, that she was incompetent until January 2015 and therefore the statute of limitations did not begin to run until that time. Respondent concedes that point for purposes of this motion. Respondent states that should the court deny the motion to dismiss, respondent will answer the first amended petition, preserve the statute of limitations defense based on the equitable tolling argument, and proceed on the merits of petitioner's claims. (ECF No. 30 at 4 and n.4.)

Thus, for purposes of this motion, petitioner's August 25, 2015 petition will be considered timely filed. The two issues then are: (1) whether the claims in the first amended petition relate

---

[2] Because petitioner was acting in pro per, the filing date for her petition was the date she gave it to prison authorities for mailing. See Houston v. Lack, 487 U.S. 266, 270 (1988). That date is August 10, 2015. (See ECF No. 1 at 15.) The twelve-day difference between the date petitioner gave the petition to prison authorities and the date it was filed is not relevant to the court's analysis herein. For ease of reference, this court refers to the petition by the date it was filed in this court.

back to the claims in the original petition; and (2) whether the first amended petition should be excepted from the statute of limitations bar because petitioner is actually innocent.

### A. Relation Back

#### 1. Claims in the Original Petition

Because they were filed by petitioner acting in pro per, the claims in the original petition are not entirely clear. Respondent characterizes them as claims that petitioner was not competent to stand trial and that her attorney failed to inform her of her appeal rights. Based on the fact petitioner sought supervised conditional release from Napa State Hospital, respondent argues that petitioner's claims should be considered as challenges to only her murder conviction. Petitioner's counsel characterizes the claims in the original petition differently. She contends petitioner was challenging her plea in all respects and that she challenged the competence of her attorney in the course of the plea negotiations.

The court must review a pro se petitioner's filings liberally. Hebbe v Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A fair review of petitioner's original petition shows that petitioner made the following allegations: (1) she was incompetent at the time she entered her pleas (ECF No. 1 at 5, 10); (2) her trial attorney failed to request a competency evaluation at that time (id. at 7); and (3) her trial attorney did not inform her that she had only 60 days to appeal (id. at 8).

#### 2. Claims in the First Amended Petition

In the first amended petition, petitioner makes two claims. First, she alleges she was deprived of due process because there was an insufficient factual basis for the attempted murder charge. (ECF No. 24-1 at 10-11.) Petitioner alleges that the attempted murder charge was requested by petitioner's trial attorney as part of the plea negotiations so that petitioner could get mental health treatment. At the change of plea hearing, petitioner's trial attorney informed the court of the parties' stipulation that "there's a factual basis for the amended charge and that she is, in fact, not guilty by reason of insanity on that particular count." (LD 1 at 3.) The district attorney then set out the factual basis for the attempted murder charge. The charge was based on petitioner's statements to investigators that after she killed her daughter, "she instructed her son to remove his clothing" and "had begun preparations to drown him as well." (Id. at 4.)

6

In her second claim, petitioner alleges her trial attorney rendered ineffective assistance because he failed to inform petitioner that the attempted murder charge was a legal fiction created to allow petitioner to get mental health treatment. Petitioner states that she did not realize she was consenting to an indefinite period of hospitalization at Napa State Hospital. While recognizing that the treatment she received there was "beneficial," petitioner complains that her stay at Napa State Hospital "has consumed seven years of [her] life for which she will receive no credit against the prison sentence awaiting her for the crime she does not contest, the murder of her daughter." (ECF No. 33 at 2.)

### 3. Do the Claims in the First Amended Petition Relate Back?

#### a. The Legal Frameworks for the Claims are Distinct

Petitioner's original claims and amended claims are legally distinct. The analytical framework for a challenge to competence to plead guilty, petitioner's original claim, is the same as the test for competence to stand trial. It requires the court to consider whether petitioner had the ability at the time of the plea hearing "to consult with h[er] lawyer with a reasonable degree of rational understanding" and had "a rational as well as factual understanding of the proceedings against h[er]." Godinez v. Moran, 509 U.S. 389, 396 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)). Whether a defendant was capable of understanding the proceedings and assisting counsel depends on "evidence of the defendant's irrational behavior, h[er] demeanor in court, and any prior medical opinions on competence to stand trial." Drope v. Missouri, 420 U.S. 162, 180 (1975). None of these factors is determinative, but any one of them may be sufficient to raise a reasonable doubt about competence. Id. A reviewing court should determine whether a defendant had "the ability to make a reasoned choice among the alternatives presented to h[er]." Miles v. Stainer, 108 F.3d 1109, 1112 (9th Cir. 1997) (quoting Chavez v. United States, 656 F.2d 512, 518 (9th Cir. 1981)).

The analytical framework for petitioner's claim that there was no legal basis for the attempted murder charge is different. Petitioner appears to argue in his petition that the Due Process Clause mandates a factual basis for a plea. (ECF No. 24-1 at 10-11.) While it is questionable whether that claim is cognizable in a federal habeas proceeding, see Loftis v.

Almager, 704 F.3d 645, 647-48 (9th Cir. 2012) (no constitutional requirement that judge find a factual basis for a guilty plea), the court is not at this point considering the merits of petitioner's claim, only its analytical framework. As a due process claim challenging the lack of evidence supporting a criminal charge, the court finds an insufficiency of the evidence analysis appropriate.

In reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The essential elements of the crime of attempted murder are the "specific intent to kill" and "the commission of a direct but ineffectual act toward accomplishing the intended killing." People v. Lee, 31 Cal. 4th 613, 623 (2003).

The analytical framework for the ineffective assistance of counsel claims is, of course, the same. However, the operative facts underlying each claim are, like the facts supporting the other claims, different.

### b. The Operative Facts for the Claims are Distinct

The operative facts for the claims in the original petition involve petitioner's competence at the time she entered her pleas. The court does not accept respondent's characterization of those claims as challenging only the murder conviction. Rather, liberally construed, petitioner appeared to be attempting to challenge her pleas to both charges. In the original petition, petitioner describes her mental state when she was in jail after her arrest and at the time of her pleas. (See ECF No. 1 at 5, 7-8, 10.)

The operative facts for the claims in the first amended petition arise out of a different set of facts – the circumstances at the time of the crimes. (See ECF No. 24-1 at 10-12.) Petitioner's argument focuses on the absence of an act. The question of whether petitioner committed an act with the purpose of killing of her son would require consideration of facts showing what occurred that day.

Petitioner argues that the operative facts for both sets of claims are the same – they involve the voluntariness of petitioner's plea. According to petitioner, the claims are all supported by the reports from the alienists describing petitioner's psychotic state at the time of the

8

crimes. Petitioner paints her claims with too broad a brush.

Petitioner's state of mind at issue in her first petition is her state of mind at the time she entered her pleas. In the second petition, the issues are petitioner's state of mind and actions at the time of the murder and attempted murder. The crimes were committed on November 15, 2009. (See Transc. of Prelim. Hrg., Ex. 1 to First Am. Pet., at 5 (ECF No. 24-2 at 8).) Petitioner entered her pleas on April 29, 2011, over seventeen months later. While there would be some overlapping facts regarding petitioner's mental health, the time periods are distinct, and therefore, much of the evidence would be different.

The associated claims of ineffective assistance of counsel are not related simply because they both deal with counsel's behavior during the plea proceedings. See United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."); Schneider v. McDaniel, 674 F.3d 1144, 1151-53 (9th Cir. 2012) (ineffectiveness for failure to obtain competency evaluation to stand trial not the same as ineffectiveness for failure to develop a voluntary intoxication defense). Those ineffective assistance of counsel claims are supported, in large part, by the same core of facts underlying petitioner's other claims – her competence during the plea negotiations in the original petition and the factual basis for the attempted murder charge, based on petitioner's mental state at the time of the crimes, in the amended petition.

Petitioner cites Valdovinos v. McGrath, 598 F.3d 568 (9th Cir. 2010) in support of her relation back argument. In Valdovinos, the court held that an amended Brady claim related back to the original Brady claim because

> both the original and amended claims pertain to suppressed exculpatory evidence originating from materials from the police investigation. Each claim, therefore, is of the same type- exculpatory information the government had in its file-that the government failed to disclose at the required time. . . "[t]he Brady claims in the original [petition] ... satisfy Rule 15(c) by providing the government with the notice that the statutes of limitation were intended to provide." Id. Therefore, we hold that the district court

9

|   | did not abuse its discretion in permitting the amendments to the Brady claims." |

598 F.3d at 575. The court also considered associated ineffective assistance of counsel claims. The court held that the addition of four new pieces of evidence that counsel failed to find was related to the original ineffective assistance of counsel claim that counsel did not adequately investigate suppressed exculpatory evidence upon learning of it. Id. at 575-76.[3]

Unlike Valdovinos, this is not a case in which an amended claim "simply add[ed] more evidence" to the original claim. See 593 F.3d at 575; see also Rodriguez v. Adams, 545 Fed. App'x 620 (9th Cir. Nov. 18, 2013) (later claim that counsel was ineffective for failing to investigate the testimony of two potential exculpatory witnesses who were present at the scene related back to earlier claim that counsel was ineffective for failing to investigate the testimony of three other witnesses who also were present at the scene).

The court finds petitioner's claims in the first amended petition do not relate back to the claims in the original petition. The core facts underlying each set of claims is different in both time and type. Further, the legal analysis for each claim is not the same. For the claims to survive the statute of limitations, petitioner must show an exception to the statute or a basis for tolling. Petitioner does not argue any sort of tolling applies after she regained competence in January 2015. The court addresses petitioner's one remaining argument – that she is actually innocent of the attempted murder of her son and should not be bound by the statute of limitations for claims regarding her plea to attempted murder.

**B. Exception to Statute of Limitations for Actual Innocence**

The United States Supreme Court has held that "[a]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . [or] expiration of the statute of limitations. McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). "When an otherwise time-barred habeas petitioner 'presents evidence of innocence so strong that

---

[3] Valdovinos was vacated on other grounds. See Horel v. Valdovinos, 562 U.S. 1196 (2011). On remand, the Court of Appeals reiterated its determinations that amendments to the Brady and ineffective assistance of counsel claims were timely because the claims related back to the original petition. 423 Fed. App'x 720 (9th Cir. 2011).

a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error,' the Court may consider the petition on the merits. Stewart v. Cate, 757 F.3d 929, 937-38 (9th Cir. 2014) (quoting Schlup v. Delo, 513 U.S. 298 (1995)). The standard is very high and "tenable actual-innocence gateway pleas are rare." McQuiggin, 133 S. Ct. at 1928. A petitioner must show that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. (citing Schlup, 513 U.S. at 329). As the Court stated earlier, a petitioner must show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536-37 (2006),

Courts have found the "Schlup gateway" satisfied in few cases. In Larsen v. Soto, 742 F.3d 1083, 1096-97 (9th Cir. 2013), the court noted that the Schlup gateway is "demanding" and "precedents holding that a habeas petitioner satisfied its strictures have typically involved dramatic new evidence of innocence." In McQuiggin, the Supreme Court re-stated its description of the Schlup gateway: "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" 133 S. Ct. at 1928 (quoting Schlup, 513 U.S. at 329). Thus, the Schlup gateway requires the production of "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence'—sufficient to persuade the district court that 'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Zapata v. Davis, No. SA-16-CA-1244-XR, 2017 WL 1403307, at *2 (W.D. Tex. Apr. 18, 2017) (Schlup gateway through statute of limitations requires presentation of new evidence of innocence) (quoting McQuiggin, 133 S. Ct. at 1928); see also Black v. Vasquez, No. CV 16-4940-ODW (GJS), 2016 WL 6436822, at *7 (C.D. Cal. Oct. 31, 2016) ("The Schlup gateway test requires the presentation of 'new reliable evidence,' which then is compared to the evidence presented previously."); Shoulders v. Eckard, No. 14-1753, 2016 WL 1237798, at *4 (W.D. Pa. Feb. 29, 2016); Lowman v. Swarthout, No. 13-cv-1729-BAS (PCL), 2014 WL 4704590, at *3 (S.D. Cal. Sept. 22, 2014).
////

In the present case, petitioner fails to tender any new evidence, much less the requisite "reliable evidence" required by Schlup, to show actual innocence. Petitioner argues that the facts are not disputed and that they do not establish attempted murder. Petitioner's argument is a legal, not factual, one. A claim that the facts were legally insufficient to establish the charged violation is not a basis for a showing of actual innocence under McQuiggin and Schlup. See Bousley v. United States, 523 U.S. 614, 623 (1998) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency."); Hageman v. Hill, 314 Fed. App'x 996, at *1 (9th Cir. 2009) (same); Jones v. Ducart, No. 2:13-cv-2129-JKS, 2016 WL 6494579, at *16 (E.D. Cal. Nov. 1, 2016) (same). Accordingly, petitioner's contention that he is entitled to an exception to the statute of limitations based on actual innocence should fail.

For the reasons set forth above, the court finds the claims in the first amended petition do not relate back to the claims in the original petition and are, therefore, untimely. The court further finds that petitioner has failed to establish an exception to the statute of limitations for actual innocence. Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss (ECF No. 30) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the

////

////

////

district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: June 1, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/ram2074.mtd